## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JANE ROE, *a fictitious name*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-1525-RGA-SRF |
| | ) | |
| WYNDHAM WORLDWIDE, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION[1]

Presently before the court in this personal injury action are two motions brought by

plaintiff Jane Roe ("Plaintiff"): (1) the motion to amend the complaint to renew claims against

previously dismissed defendants Wyndham Grand Istanbul Levent (the "Hotel"), Özdilek Hotel

Tourism and Trade Limited Company ("Özdilek"), and Wyndham Hotel Group (UK) Limited

("Wyndham UK;" collectively, the "Foreign Defendants"), (D.I. 77);[2] and (2) the motion for

sanctions pursuant to Federal Rule of Civil Procedure 37, (D.I. 90).[3]  Defendants Wyndham

Hotel Group, LLC ("WHG"), Wyndham Hotel Management, Inc. ("WHM"), and Wyndham

Hotels and Resorts, LLC ("WHR;" collectively, the "Delaware Defendants") oppose both

motions.  The Delaware Defendants oppose the motion to amend insofar as it relates to

---

[1] Motions to amend are generally treated as "non-dispositive" motions within the pretrial authority of a magistrate judge on referral unless they dispose of the lawsuit or a party's claim. *See Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016) (citing *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998)); *Ingevity Corp. v. BASF Corp.*, C.A. No. 18-cv-1391-RGA, 2020 WL 1329604, at *2 (D. Del. Mar. 23, 2020); *Smith v. State of Delaware*, C.A. No. 07-600-JJF-LPS, 2009 WL 2175635, at *1 n.2 (D. Del. July 21, 2009).
[2] The briefing on the motion to amend is found at D.I. 77, D.I. 82, and D.I. 83.
[3] The briefing on the motion for sanctions is found at D.I. 91, D.I. 95, and D.I. 96.

Wyndham UK.[4]  (D.I. 82)  For the reasons set forth below, the motion to amend is DENIED with
prejudice, and the motion for sanctions is GRANTED-IN-PART.

## I.   BACKGROUND

The facts have been previously discussed in the court's Memorandum Opinion on the
Delaware Defendants' motion to dismiss. (D.I. 33)  This Memorandum Opinion will focus on
the facts relevant to Plaintiff's proposed amendment to rejoin the three Foreign Defendants and
events occurring in the case since the court's Memorandum Opinion of February 12, 2020.

Plaintiff Jane Roe, proceeding under a pseudonym, was employed as a diplomat for the
United States Department of State ("State Department"). (D.I. 77, Ex. 1 at ¶ 20)  In October of
2016, she traveled to Istanbul, Turkey for an intended two-month assignment.  (*Id.*)  The State
Department arranged for her to stay at the Hotel, which was one of a limited number of hotels in
Istanbul where the State Department permitted its staff to stay.  (*Id.* at ¶ 21)

Around November 13, 2016, Plaintiff telephoned the Hotel's spa facility to schedule a
massage to treat her back problems.  (*Id.* at ¶¶ 23-25)  During this appointment, Plaintiff alleges
that she was sexually assaulted by the massage therapist, referred to as "John Doe."  (*Id.* at ¶¶
28-39)

Plaintiff reported the sexual assault the following day to the Deputy Chief of Security at
the American Consulate.  (*Id.* at ¶ 42)  The incident was investigated by the State Department's
Regional Security Officer who reported it to the Hotel staff.  (*Id.*)  Plaintiff alleges that no person
associated with the Hotel reported the assault to law enforcement or other authorities.  (*Id.* at ¶

---

[4] Wyndham Worldwide, Inc. no longer exists as a legal entity, having merged into defendant
Wyndham Hotels and Resorts, LLC.  (D.I. 33 at 1 n.1)  The Wyndham Grand Istanbul Levent
(the "Hotel") has not entered an appearance in this case, although service was completed on
April 13, 2019.  (D.I. 28)  The Hotel is a franchise operated by Özdilek and is not a subsidiary of
any Wyndham entity.  (D.I. 33 at 1 n.1; D.I. 1 at ¶ 19; D.I. 77, Ex. 1 at ¶ 9)

50)  Plaintiff further alleges that, based on John Doe's statements to her, it can be inferred that he

is a repeat sexual offender.  (*Id.* at ¶ 46)  Plaintiff, therefore, claims that the Hotel knew or

should have known it was not appropriate to authorize him to give massages to female customers

in his capacity as an employee of the Hotel.  (*Id.* at ¶ 47)

On October 2, 2018, Plaintiff filed a complaint asserting claims of negligence and

vicarious liability against two sets of defendants.  The first set consists of the companies

incorporated in Delaware: Wyndham Hotel Group, LLC, Wyndham Hotel Management, Inc. and

Wyndham Hotels and Resorts, LLC (collectively, the "Delaware Defendants").  (*Id.* at ¶¶ 4-6,

15)  The second set is the group of three defendants headquartered and doing business overseas:

the Hotel, Özdilek, and Wyndham UK (collectively, the "Foreign Defendants").  (*Id.* at ¶¶ 7-9)

Wyndham UK is incorporated under the laws of England and Wales and has its principal place of

business in London.  (*Id.* at ¶ 7)  Özdilek is incorporated under the laws of the Republic of

Turkey and has its principal place of business in Istanbul, and the Hotel is alleged to be a wholly

owned subsidiary of, or doing business as, Özdilek.  (*Id.* at ¶¶ 8-9)

The court granted, without prejudice, the Foreign Defendants' previous motion to dismiss

for lack of personal jurisdiction on February 12, 2020.  (D.I. 34)[5]  In its Memorandum Opinion,

the court held that Plaintiff had failed to satisfy Delaware's statutory requirement for personal

jurisdiction.  (D.I. 33 at 4)  Plaintiff argued that Wyndham UK and Özdilek had contact with

Delaware through a website accessible in the U.S. and because of a franchise relationship with

the Delaware Defendants.  (*Id.* at 4-6)  The court found that Plaintiff did not establish specific

jurisdiction based on the website because "Plaintiff [did] not allege any connection between the

---

[5] The court denied the Delaware Defendants' motion to dismiss for forum non conveniens and
failure to state a claim.  (D.I. 33; D.I. 34)

website, Delaware, and her claims." (*Id.* at 5)  Plaintiff also failed to show that her claims arose

out of any franchise relationship between Wyndham UK, Özdilek, and the Delaware Defendants.

(*Id.* at 6)  Instead, the court determined that Plaintiff's position on the franchise relationship was

a repackaged argument based on the website, which the court had already rejected.  (*Id.*)

On February 26, 2020, Plaintiff filed a motion requesting leave to amend her complaint

and take jurisdictional discovery from the Foreign Defendants.  (D.I. 35)  The court denied both

requests without prejudice on June 1, 2020.  (D.I. 45)  Plaintiff served written discovery requests

on the Delaware Defendants three months later.  (D.I. 46)  The Delaware Defendants served

responses to Plaintiff's written discovery requests in October of 2020.  (D.I. 51; D.I. 52)

A scheduling order was entered on December 15, 2021.  (D.I. 60)  The scheduling order

contemplated phased discovery which would allow Plaintiff to renew her claims against Foreign

Defendants at the end of the first phase of discovery on April 15, 2022.  (*Id.* at ¶ 3)

On January 10, 2022, Plaintiff moved to compel discovery from the Delaware

Defendants, arguing that Delaware Defendants' responses to the discovery requests served more

than fifteen months earlier were deficient.  (D.I. 61; D.I. 62)  The court granted-in-part Plaintiff's

requested relief in an order dated January 27, 2022.  (D.I. 65)  The Delaware Defendants made

subsequent document productions, but Plaintiff continued to challenge the Delaware Defendants'

privilege assertions and unexplained redactions in produced material.  (D.I. 91, Exs. 1, 4)

Plaintiff filed the present motion for renewal of her claims on October 10, 2022.  (D.I.

77)  On November 4, 2022, the Delaware Defendants filed a brief opposing Plaintiff's motion

only as it pertains to Wyndham UK.  (D.I. 82 at 1 n.1)  Plaintiff filed her reply brief on

November 14, 2022.  (D.I. 83)  During briefing on the motion to amend, the Delaware

Defendants informed Plaintiff they would stand on their privilege claims and would not produce additional documents. (D.I. 91, Ex. 5)

## II.  LEGAL STANDARDS

### A.  Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party may amend its pleading after a responsive pleading has been filed "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  The decision to grant or deny leave to amend lies within the court's discretion. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco*, 921 F.2d 484, 486–87 (3d Cir. 1990).  In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

### B.  Personal Jurisdiction

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the court may dismiss a suit for lack of jurisdiction over a person.  "[T]he plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence" when a defendant challenges the court's exercise of personal jurisdiction. *Turner v. Prince George's Cty. Pub. Schs.*, 694 F. App'x 64, 66 (3d Cir. 2017).  To meet this burden the plaintiff may produce "sworn affidavits or other competent evidence" because a Rule 12(b)(2) motion "requires resolution of factual issues outside of the pleadings." *Rockwell Automation, Inc. v. EU Automation, Inc.*, C.A. No. 21-1162-MN, 2022 WL 3576231, at *2 (D. Del. Aug. 19, 2022) (quoting *Time Share Vacation Club v.*

5

*Atl. Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)).  At the pleading stage, without an

evidentiary hearing on the motion to dismiss, "the plaintiff need only establish a prima facie case

of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all

factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.

2004).  Nevertheless, the plaintiff must allege "specific facts," as opposed to vague or conclusory

assertions. *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007).

To exercise personal jurisdiction over a defendant, the court must answer two questions:

one statutory and one constitutional.  With respect to the statutory analysis, the court analyzes

the long-arm statute of the state in which the court is located.  *See IMO Indus., Inc. v. Kiekert*

*AG*, 155 F.3d 254, 259 (3d Cir. 1998).  Delaware's long-arm statute requires a showing of

specific jurisdiction arising from the defendant's activities within the forum state, or general

jurisdiction based on continuous or systematic contacts with the forum state.  10 *Del. C.* §

3104(c); *see Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 622 (D. Del.

2015); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991).  The

court must then determine whether the exercise of personal jurisdiction comports with due

process by analyzing whether the plaintiff has demonstrated that the defendant "purposefully

avail[ed] itself of the privilege of conducting activities within the forum State," so that it should

"reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 297 (1980) (citations omitted).

The first step in the jurisdictional analysis is to establish that the defendant's actions are

within those considered in the forum state's long-arm statute. *IMO Indus., Inc.*, 155 F.3d at 259.

Delaware's long-arm statute authorizes the exercise of jurisdiction over a non-resident who in

person or through an agent: (1) transacts any business or performs any character of work or

service in the State; (2) contracts to supply services or things in the State; (3) causes tortious injury in the State by an act or omission in this State; or (4) causes tortious injury in the State or outside the State if the person regularly does or solicits business, engages in any persistent course of conduct in the State, or derives substantial revenue from services or things used or consumed in the State. 10 *Del. C.* § 3104(c)(1)-(4). Subsections (c)(1) through (c)(3) authorize the exercise of specific jurisdiction while subsection (c)(4) authorizes general jurisdiction. Only general jurisdiction allows a plaintiff's cause of action to be "unrelated to the defendant's activities in the forum state." (D.I. 33 at 5) (quoting *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 210 (3d Cir. 2013)).

### C. Rule 37 Sanctions

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides for sanctions once a court has ordered a party to answer discovery and that party fails to comply with the order. Fed. R. Civ. P. 37(b)(2). "The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 134 (3d Cir. 2009) (internal citations and quotation marks omitted). The purpose of sanctions under Rule 37 is "both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Rule 37 "authorizes only the imposition of costs and expenses that result from the particular misconduct the court sanctions." *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995).

## III.   DISCUSSION

### A. Motion to Amend

Plaintiff moves for leave to amend the complaint to bolster her jurisdictional allegations as to the Foreign Defendants, following the court's prior ruling dismissing those defendants for lack of personal jurisdiction. (D.I. 33 at 4-6)  In response, the Delaware Defendants argue that Plaintiff's proposed amended pleading lacks sufficient allegations to establish jurisdiction over Wyndham UK, rendering the proposed amended complaint futile. (D.I. 82 at 6-19)  The Delaware Defendants do not address the other Rule 15(a) factors of undue delay, bad faith, and dilatory motive, despite previous efforts by Wyndham UK to preclude the proposed amended pleading on those grounds. (D.I. 54; *see also* § III.B.3, *infra*)

As in the original complaint, the proposed first amended complaint ("FAC") asserts causes of action against all Defendants for vicarious liability (Count I) and negligence (Counts II through VII [*sic*]). (D.I. 77, Ex. 1 at ¶¶ 72-110)  The amended jurisdictional allegations against the Foreign Defendants appear at paragraph 16 of the proposed FAC as follows:

> 16. Defendants Wyndham Hotel UK, Özdilek and Wyndham Grand Istanbul are subject to the specific jurisdiction of this Court as a result of their continuous and systematic contacts with the state arising from their franchise relationship with Wyndham Worldwide, Wyndham Hotel Group, Wyndham Hotel Management and/or Wyndham Hotels and Resorts, through the Delaware franchisor's oversight and control of their operations, training, inspections, ability to discipline the foreign corporations, including through the termination of Wyndham's licensure, provision of operating and booking systems, maintenance of guest relationships and complaints, as well as payments by the foreign corporations to the entities in Delaware for the provision of these services, either directly, or via corporate intermediaries, the reporting of legal or ethical violations by foreign corporation employees to the Delaware companies for remediations, and their utilization of the wyndhamhotels.com website operated by, and the other marketing provided by, the aforementioned Delaware entities to procure customers such as Jane Roe and through which their liability in this case arises.

(D.I. 77, Ex. 1 at ¶ 16)  The averments in this paragraph and Plaintiff's briefing on the pending motion to amend are directed not only to specific jurisdiction, but also to general jurisdiction over the Foreign Defendants through alleged continuous and systematic contacts with Delaware.[6] (*Id.*; D.I. 77 at 6-7 (arguing that the "Delaware Defendants effected substantial and persistent control over Foreign Defendants and the operations at the Levent [supporting general jurisdiction], as well as Foreign Defendants' direct business transactions with their counterparts in the State of Delaware [supporting specific jurisdiction].")); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (explaining that a defendant must have developed "continuous and systematic" contacts with the forum state for an assertion of general jurisdiction consistent with due process).

For the following reasons, Plaintiff's proposed FAC and the exhibits attached thereto fail to establish either specific or general jurisdiction over the Foreign Defendants under the long-arm statute.  Because Plaintiff has failed to meet the statutory requirement for establishing specific or general personal jurisdiction under the Delaware long-arm statute, the court will not address the constitutional due process requirement.  *See Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002).

---

[6] Plaintiff's briefing does not clearly delineate between arguments grounded in specific, versus general, jurisdiction.  Plaintiff's reply brief appears to suggest that 10 *Del. C.* § 3104(c)(4) requires a greater number of contacts without necessarily limiting the provision to general jurisdiction.  (D.I. 83 at 3)  For clarity of the record, Delaware courts and the Third Circuit have recognized that §§ 3104(c)(1) and (2) are specific jurisdiction sections, and § 3104(c)(4) is interpreted as a general jurisdiction provision. *See Kloth v. S. Christian Univ.*, 320 F. App'x 113, 115 (3d Cir. Aug. 5, 2008); *LaNuova D&B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (Del. 1986); *Yankees Ent'mt & Sports Network, LLC v. Hartford Fire Ins. Co.*, 634 F. Supp. 3d 203, 209 (D. Del. 2022).

### 1. Specific jurisdiction

In her briefing on the motion to dismiss the original complaint, Plaintiff only asserted specific jurisdiction over the Foreign Defendants based on the marketing of the Hotel through the wyndhamhotels.com website and the Foreign Defendants' franchise relationship with the Delaware Defendants. (D.I. 25 at 9; D.I. 33 at 5)  The court dismissed Wyndham UK and Özdilek for lack of personal jurisdiction, finding that Plaintiff did not allege her claims arose out of any use of the website or out of any franchise relationship.  (D.I. 33 at 5-6)

In the proposed FAC, Plaintiff amends the jurisdictional allegations to add further references to the website and the Delaware Defendants' alleged contractual control over the Foreign Defendants.  But these changes do not substantially alter the court's prior analysis or otherwise establish a connection between Plaintiff's causes of action and Delaware.  Plaintiff's arguments as to specific jurisdiction are again limited to: "(1) marketing the Hotel through a website accessible in the United States, and (2) having a franchise relationship" with the Delaware Defendants.  (D.I. 33 at 5; D.I. 77)

The FAC contains additional averments about Plaintiff's use of wyndhamhotels.com to explore the Hotel's spa offerings: "Plaintiff utilized the website to inspect the services offered by the spa facility as well as its standards for quality, use of well trained professionals, and privacy." (D.I. 77, Ex. 2 at ¶ 24)  These amended allegations still fail to show that Plaintiff's tort claims arise from the use of the website in Delaware, as required to establish specific jurisdiction.[7]  (D.I. 33 at 6)  The court previously granted the 12(b)(2) motion to dismiss because the original complaint "does not allege that Plaintiff looked at the website and, if so, when." (*Id.*

---

[7] The portion of Plaintiff's opening brief pertaining to specific jurisdiction based on the website appears to cite to and discuss the original complaint, as opposed to the FAC.  (D.I. 77 at 17-18)

at 5)  Although the FAC now alleges that Plaintiff looked at the spa offerings on the website, it does not specify when she did so.  (D.I. 77, Ex. 2 at ¶ 24)  And other key allegations remain largely unchanged in the FAC, which avers that Plaintiff booked the appointment because she "trusted the Wyndham name," and she completed the booking by calling the spa directly. (*Compare* D.I. 77, Ex. 2 at ¶¶ 24-25 *with* D.I. 33 at 5-6)  Plaintiff's review of the Delaware Defendants' website is therefore not enough to establish specific jurisdiction over the Foreign Defendants. *See Lozinski v. Black Bear Lodge, LLC*, 2017 WL 1380416, at *4 (D.N.J. Apr. 10, 2017) (finding that hotel's website did not establish specific jurisdiction where plaintiff made her reservation by phone).

Plaintiff also fails to show that her claims arise out of an agency relationship between the Foreign Defendants and the Delaware Defendants.  The court previously explained that Plaintiff's claims do not arise directly out of the existence of the franchise relationship itself, and the FAC contains no allegations that would change that analysis.  (D.I. 33 at 6); *cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) (finding specific jurisdiction based on a franchise relationship where plaintiff asserted a claim for breach of the franchise agreement).  Moreover, cases from this district confirm that Plaintiff's agency theory does not support the exercise of jurisdiction over foreign subsidiaries based on the jurisdiction of a Delaware parent because "jurisdiction is a stream, not a two-way street."[8] *Trachtenberg v. Marriott Int'l, Inc.*, C.A. No.

---

[8] For the first time in her reply brief, Plaintiff argues that the Delaware Defendants' control over Wyndham UK subjects them to the alter ego theory.  (D.I. 83 at 6)  "A reply brief, however, is not the appropriate time to raise a new argument." *Cohen v. Cohen*, C.A. No. 19-1219-MN, 2022 WL 952842, at *4 (D. Del. Mar. 30, 2022) (citing cases).  Regardless, an alter ego theory that treats the parent and subsidiary as a single enterprise "does not apply to the one-way stream of a principal directing its agent," as alleged in the proposed FAC. *See Trachtenberg*, 2021 WL 5299823, at *2.  For these reasons, Plaintiff's citation to *Genesis Bio Pharmaceuticals, Inc. v. Chiron Corp.*, 27 F. App'x 94, 98 (3d Cir. 2002) is also inapposite.  (D.I. 83 at 6)  There, the Third Circuit applied the New Jersey long-arm statute to justify the exercise of personal

21-1002-SB, 2021 WL 5299823, at *1 (D. Del. Nov. 15, 2021); *see also LivePerson, Inc. v. NextCard, LLC*, C.A. No. 08-62-GMS, 2009 WL 742617, at *4 (D. Del. Mar. 20, 2009) (explaining that agency theory may allow a court to establish jurisdiction over the principal based on its jurisdiction over the agent).  In *Trachtenberg*, the court explained that jurisdiction may travel from a Delaware subsidiary to its foreign parent because a parent directing the activities of the Delaware subsidiary must have contact with Delaware.  *Id.*  But the opposite does not hold true, and jurisdiction cannot travel from a Delaware parent to a foreign subsidiary because the foreign subsidiary would have no expectation of being subjected to litigation in Delaware. *Id.*

The FAC repeatedly refers to "franchise and other agreements," but neither the FAC nor the motion to amend attaches a complete copy of an applicable franchise agreement.[9]  (D.I. 77, Ex. 1 at ¶¶ 4, 7, 10-12)  Examples of other documents attached as exhibits to the briefing to bolster Plaintiff's jurisdictional allegations include the following:

- Two communications between the CEO of WHR and the Chairman of the Board of Özdilek suggesting an ongoing ten-year relationship, but no direct contractual relationship as Özdilek signed a franchise agreement with Wyndham UK, (*id.*, Ex. 3);

---

jurisdiction over a wholly owned non-resident subsidiary based on the contacts of the parent. *Id.* at 98.  The Third Circuit considered whether the parent and non-resident subsidiary "operate[d] as a single entity, or unified and cohesive economic unit," an allegation not made in the present case. *Id.*; *see also Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (considering alter ego theory of personal jurisdiction over the parent company based on general or specific jurisdiction over the subsidiary).

[9] The first page of a "Master Franchise Agreement" between WHG Ireland, an entity not involved in this litigation, and Wyndham UK is included within Exhibit 16 to the motion to amend.  (D.I. 77, Ex. 16 at WYN000172)

- Internal executive emails of the Delaware Defendants describing resolution of a data privacy breach for an Özdilek customer unrelated to any claim in the pending suit; (*id.*, Ex. 6);

- WHG's Program Book describing franchisee obligations such as enrollment in revenue, sales procurement, and IT systems for maintaining the Wyndham brand, (*id.*, Ex. 7);

- Quality Assurance and Evaluation Reports of the Hotel for 2015 and 2016, (*id.*, Ex. 8);

- WHR's Standards of Operation and Design for franchisees in Europe, the Middle East, and Africa, (*id.*, Ex. 9);

- Service Assessment Fees charged by the Delaware Defendants to the franchisees, (*id.*, Ex. 10);

- Wyndham emails dated ten days prior to the incident scheduling training consisting of a management workshop in Turkey, including the general manager of Özdilek, (*id.*, Ex. 11);

- WHR's Human Rights Policy Statement, (*id.*, Ex. 13);

- A corporate flowchart including Wyndham UK, (*id.*, Ex. 14);

- Wyndham UK's license agreement allowing Wyndham UK to sublicense the brand to properties such as Özdilek and setting forth requirements for compliance with the Wyndham brand standards, (*id.*, Ex. 15); and

- Documents relating to third party website bookings in exchange for management fees, which are not specific to Özdilek, the Hotel, or specific activities, such as reservation bookings, in Delaware, (*id.*, Ex. 17).

13

The foregoing examples referenced by Plaintiff to establish specific jurisdiction over the Foreign Defendants lack the critical component of demonstrating the transaction of any business, work, or service in Delaware by the Foreign Defendants. Nor are they examples of contacts to supply services or things in the state of Delaware. Instead, they are examples of activities by the Delaware Defendants that are directed outside of Delaware. Plaintiff has therefore failed to show how § 3104(c)(1) and (2) are satisfied.

While the franchise and license-related documents included by Plaintiff demonstrate the Delaware Defendants' control over quality and brand standards at franchisee hotels, these documents do not reflect activities arising out of the conduct resulting in Plaintiff's injury. *See BP Chems. Ltd. v. Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) ("Specific personal jurisdiction exists when the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or are related to those activities.'"). The FAC attributes Plaintiff's injury to the Hotel's failure to terminate a problem employee. (D.I. 77 at ¶¶ 47-48, 51-71) But the exhibits to Plaintiff's brief confirm that "[f]ranchisees have full and complete control over and responsibility for their contracts, operations, management, labor relations, and employment practices." (*See, e.g., id.*, Ex. 9 at 8-9) There is no evidence that Wyndham UK and the Delaware Defendants had any authority to hire or fire employees at the Hotel or otherwise control daily operations and management at the Hotel. (*See* D.I. 16, Ex. B at ¶¶ 8–9, 14–17) Because Plaintiff's causes of action do not arise out of the contractual relationships between the Foreign Defendants and the Delaware Defendants, there is no basis for the court to exercise specific jurisdiction over the Foreign Defendants.

Plaintiff's reliance on an unreported Connecticut state court opinion, *DeLuca v. Holiday Inns, Inc.*, 1993 WL 512432 (Conn. Super. Ct. Dec. 3, 1993), and a Connecticut District Court

opinion, *Szollosy v. Hyatt Corp.*, 2000 WL 1576395 (D. Conn. Sept. 14, 2000), is unpersuasive and the cases are distinguishable.  In both cases, the court found foreign defendants were subject to personal jurisdiction for soliciting business in Connecticut.  There is no such allegation that the Foreign Defendants in the instant case solicited business in Delaware.

### 2. General jurisdiction

Plaintiff's proposed FAC and her briefing on the motion to amend also focus on the Delaware Defendants' "continuous and systematic" contacts with the Foreign Defendants and their "substantial and persistent control" over the Foreign Defendants.  (D.I. 77 at 7; Ex. 1 at ¶ 16)  To satisfy the requirements for general jurisdiction, a plaintiff must show that the defendant: (a) regularly does or solicits business in Delaware, (b) engages in any persistent course of conduct in Delaware, or (c) derives substantial revenue from services in Delaware.  10 *Del. C.* § 3104(c)(4).  "[G]eneral jurisdiction over a foreign corporation typically arises only when that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'"  *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).  Applying this standard, it is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business."  *Id.* (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)).

There is no dispute that the Foreign Defendants are not incorporated in Delaware, they do not maintain an office there, and they do not supervise their business there.  *See Chavez*, 836 F.3d at 223.  Plaintiff argues that the court nonetheless has general jurisdiction over the Foreign Defendants due to their franchise and licensing relationships with the Delaware Defendants, which gave the Delaware Defendants a substantial amount of control over the Foreign

15

Defendants. (D.I. 77 at 8; D.I. 83 at 9) But the Foreign Defendants' franchising and licensing

relationship with the Delaware Defendants, and the Delaware Defendants' resulting control over

brand-related aspects of the Foreign Defendants' operations, are not enough to establish general

jurisdiction. *See Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32, 33 n.10 (3d Cir.

1993) ("It is well established . . . that a nonresident's contracting with a forum resident, without

more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of

personal jurisdiction over the nonresident.")

Plaintiff admits that the Hotel and Özdilek have no direct contractual relationship with

the Delaware Defendants, and the record evidence of their direct contact with Delaware is

limited to two written communications regarding the events giving rise to this lawsuit and

another written communication scheduling a training session in Turkey. (D.I. 83 at 9; D.I. 77,

Exs. 3, 11) This evidence is not enough to support a finding that the Foreign Defendants'

Delaware affiliations are "so continuous and systematic as to render them essentially at home" in

Delaware. *Daimler*, 571 U.S. at 127.

Although Wyndham UK has a direct contractual relationship with WHR in the form of a

license agreement, the focus of that license agreement is to permit Wyndham UK to grant

sublicenses of the Wyndham brand to other foreign properties, and not to engage in continuous

and systematic activities in Delaware that might otherwise render it "generally present in the

state." (D.I. 77 at 17; Ex. 15); *Seiden v. Schwartz, Levitsky, and Feldman LLP*, C.A. No. 17-

1869-MN, 2018 WL 5818540, at *4 (D. Del. Nov. 7, 2018) (rejecting general jurisdiction

allegations where the foreign defendant provided audit services for ten Delaware corporations,

but those audit services took place outside of Delaware); *see also E.I. duPont de Nemours & Co.

v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 121 (D. Del. 2000) (finding no

general jurisdiction where Delaware subsidiaries provided revenue for the parent corporation, but Delaware citizens did not consume the goods and services provided by those Delaware subsidiaries).  Moreover, the license agreement between Wyndham UK and WHR contains a choice of law provision specifying that the agreement is governed by New Jersey law.  (D.I. 77, Ex. 15 at 9); *see Protocol, LLC v. Henderson*, 18 F. Supp. 3d 689, 699 (M.D.N.C. 2014) (explaining that "[t]he existence of a choice-of-law provision, or some other reference to the franchisor's principal place of business," is a factor in cases like *Burger King* to determine deliberate affiliation with the forum state and the foreseeability of litigation there).

Plaintiff points to evidence showing that the Delaware Defendants exercised substantial control over the Foreign Defendants by training franchisee staff and performing evaluations of foreign franchisees to ensure maintenance of the Wyndham brand standards.  (D.I. 77, Ex. 7-8) Plaintiff maintains that the Delaware Defendants had the power to strip the Foreign Defendants of benefits or terminate brand usage if the Delaware Defendants' policies were not followed. (D.I. 83 at 9-10)  But none of these activities required the Foreign Defendants to travel to Delaware or otherwise engage in a persistent course of conduct in Delaware.  *See E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 668 (D. Del. 2018) (finding the plaintiff failed to present the contacts required to establish general personal jurisdiction over a foreign subsidiary where any such contacts did not render the subsidiary "at home" in Delaware).

Plaintiff further contends that "Wyndham UK's revenue is based entirely on issuing licenses abroad that its contract with Delaware Defendants give[s] it the right to do."  (D.I. 83 at 4)  But Wyndham UK's revenue from licensing the brand abroad does not involve the provision of services or things consumed in Delaware.  Plaintiff's assertion that Wyndham UK "knows the revenue it generates through foreign transactions will be *paid to* the parent companies" in

Delaware cuts against a finding of general jurisdiction, which requires a showing that the Foreign Defendants "*derive[ ]* substantial revenue from services, or things used or consumed in the State." (D.I. 83 at 5); 10 *Del. C.* § 3104(c)(4) (emphasis added).

This decision is not inconsistent with the court's February 12, 2020 Memorandum Opinion on the motion to dismiss the original complaint. There, the court denied the Delaware Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim after determining that a factual dispute existed as to whether the Delaware Defendants owed a duty to Plaintiff or had an agency relationship with the Foreign Defendants. (D.I. 33 at 15-16) In contrast, the instant motion requires the court to analyze whether Plaintiff's proposed FAC would be futile as to the Foreign Defendants for lack of personal jurisdiction under Rule 12(b)(2), which is "inherently a matter which requires resolution of factual issues outside the pleadings." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603-04 (3d Cir. 1990) (acknowledging the procedural distinctions between a Rule 12(b)(6) motion and a Rule 12(b)(2) motion). Since the court's 2020 Memorandum Opinion on the motion to dismiss, the parties have engaged in substantial discovery, which is incorporated by reference into Plaintiff's proposed FAC to the extent that it bears on the jurisdictional analysis. (D.I. 77 at 7; Exs. 3, 7-11, 13-15, 17) As a result, the jurisdictional analysis under Rule 12(b)(2) does not contradict the court's 2020 Memorandum Opinion denying the Rule 12(b)(6) motion to dismiss filed by the Delaware Defendants.

### 3. Denial with prejudice

Plaintiff requests further leave to amend the pleading if the court is inclined to deny the motion to amend. (D.I. 77 at 21) Although leave to amend is generally freely given, *see Foman*, 371 U.S. at 182; Fed. R. Civ. P. 15(a)(2), this principle is outweighed by the futility of the proposed FAC following substantial discovery. Any further amendment requiring additional

18

discovery would place an undue burden on the Foreign Defendants under these circumstances. "[C]ourts should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place [on] them.'" *Seiden*, 2018 WL 5818540, at *6-7 (quoting *Phunware Inc. v. Excelmind Group Ltd.*, 117 F. Supp. 3d 613, 631 (D. Del. 2015)). Consequently, Plaintiff's motion to amend is denied with prejudice.

### B. Motion for Sanctions

Plaintiff's motion for sanctions describes a broad array of alleged deficiencies in the Delaware Defendants' production of documents following the court's January 27, 2022 order compelling the production. (D.I. 91 at 7-9; *see* D.I. 65) However, the relief sought in the proposed order is narrowly focused on two specific communications, found at Bates Nos. WYN000827 and WYN000828, which lack original page numbers and contain a total of 11 lines of redacted text. (D.I. 91, Ex. 2) To remedy the Delaware Defendants' failure to produce unredacted and complete versions of these two documents, Plaintiff seeks three forms of relief: (1) an order compelling the Delaware Defendants to serve supplemental, complete, and unredacted copies of WYN000827 and WYN000828, along with any additional communications between the Delaware Defendants and Özdilek; (2) an order awarding monetary sanctions for $8,997.50 in attorney's fees and costs associated with the present dispute; and (3) an order granting Plaintiff's motion to amend and striking the Delaware Defendants' opposition thereto, and issuing an adverse inference at trial in favor of Plaintiff, in the event that the Delaware Defendants maintain their refusal to produce the unredacted documents. The court addresses each form of relief in turn.

### 1. Production of documents

The first form of relief requested by Plaintiff is more accurately characterized as a motion

to compel, as opposed to a motion for sanctions. The motion is granted to the extent that it seeks

to compel the production of supplemental, complete, and unredacted copies of WYN000827 and

WYN000828. (D.I. 91, Ex. 6 at 6) The motion is denied to the extent that Plaintiff seeks to

compel the production of any additional communications between WHG and Özdilek from

January 1, 2016 to the present.

Under the court's prior discovery order and the applicable case law, the Delaware

Defendants are compelled to produce unredacted copies of WYN000827 and WYN000828. On

January 27, 2022, the court ordered WHG to produce documents responsive to Request for

Production Nos. 18, 19, and 20 over WHG's objections. (D.I. 65) The Delaware Defendants

argue that the redactions to these communications are proper and Plaintiff's motion to compel

should be denied because the redacted material is limited to irrelevant, nonresponsive content.[10]

(D.I. 91 at 9-11) However, it is well-established that "a party may not redact information that it

unilaterally deems sensitive, embarrassing, or irrelevant." *Del. Display Grp. LLC v. Lenovo Grp.*

*Ltd.*, C.A. No. 13-2108-RGA, 2016 WL 720977, at *6 (D. Del. Feb. 23, 2016) (citing Fed. R.

Civ. P. 34(b)(2)(E); *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301, at

---

[10] Plaintiff argues that the Delaware Defendants waived their relevance objections to Plaintiff's
Request for Production Nos. 18, 19, and 20 by not including them in their original responses to
the document requests. (D.I. 91 at 8) But the record shows that the Delaware Defendants
"object[ed] to each request to the extent that . . . seeks information and documents that are
neither relevant nor reasonably calculated to lead to the discovery of relevant, admissible
evidence" in their general objections. (D.I. 95, Ex. A at 2) This general objection, which is
incorporated by reference in the specific objections to Request for Production Nos. 18, 19, and
20, is a sufficient assertion of the relevance objection. *See U.S. v. Dentsply Int'l, Inc.*, C.A. No.
99-5-MMS, 2000 WL 654286, at *2 n.4 (D. Del. May 10, 2000). Nonetheless, partial redactions
of otherwise responsive documents on relevance grounds is not permitted for the reasons set
forth herein.

*1-2 (W.D. Pa. Sept. 30, 2008)). Accordingly, the Delaware Defendants' redactions on relevance grounds are improper.

The Delaware Defendants also argue that the June 2020 communications fall outside the scope of Plaintiff's discovery requests based on Plaintiff's offer to narrow the date range of Request for Production Nos. 18 and 19 to documents dated between January 1, 2016 and January 1, 2017.[11] (D.I. 95 at 10)  But a review of WYN000827 and WYN000828 indicates that these are communications from Özdilek to one or more of the Delaware Defendants. (D.I. 91, Ex. 2) These two communications are therefore responsive to Request for Production No. 20, which seeks the production of "all communications between Wyndham Hotel Group, LLC and Özdilek regarding the incident from January 1, 2016 to the present." (D.I. 95, Ex. D at 2)  Consequently, WYN000827 and WYN000828 do not fall outside the temporal scope of the applicable discovery request even under the Delaware Defendants' own interpretation of the requests.

Plaintiff's motion to compel is denied to the extent that it seeks the production of any additional communications between WHG and Özdilek or the Hotel from January 1, 2016 to the present.  Plaintiff obtained the court order compelling this production on January 27, 2022, and the Delaware Defendants served their supplemental responses on June 30, 2022. (D.I. 65; D.I. 96, Ex. A)  On their face, the supplemental responses modify Request for Production Nos. 18 and 19 by limiting them to a date range from January 1, 2016 to January 1, 2017.[12] (D.I. 95, Ex.

---

[11] The first document, WYN000827, is dated June 3, 2020. (D.I. 91, Ex. 2)  The second, WYN000828, has no date information on its face.  But the unredacted content in this communication confirms that it was sent after the November 2016 incident giving rise to this litigation because it discusses the lawsuit. (*Id.*)

[12] This ruling should not be construed to condone the Delaware Defendants' unilateral narrowing of the scope of discovery. *See, e.g.*, *Ruge v. Mitsubishi Caterpillar Forklift Am. Inc.*, 2012 WL 12860751, at *2 (S.D. Fla. Oct. 17, 2012) (rejecting the defendant's attempt to "unilaterally narrow[ ] the scope of discovery by placing unwarranted limitations on Plaintiff's requests."). The record before the court shows that the Delaware Defendants never formally accepted

21

D) Yet Plaintiff represents that she was "unaware that Defendants had modified the language of the requests until it was mentioned by defense counsel on June 30, 2023, in connection with [the sanctions] motion." (D.I. 96 at 3) In other words, Plaintiff did not notice the Delaware Defendants' modification of the requests or identify any specific deficiencies in the breadth of the production beyond WYN000827 and WYN000828 until a full year after the Delaware Defendants served their supplemental responses. (*Id.*) ("In the interim, Plaintiff['s] counsel believed that Defendants had responded to the requests as written[.]"). Plaintiff's failure to notice the modified language in the Delaware Defendants' supplemental responses resulted in a year-long delay in pursuing the full scope of discovery, weighing against granting this portion of the motion to compel. *See, e.g., McNulty v. Middle East Forum*, 2021 WL 2092997, at *1 n.2 (E.D. Pa. Apr. 5, 2021) (finding the plaintiff's failure to raise deficiencies until five months after discovery responses were served "evince[d] a lack of diligence."). Had responsive communications from January 1, 2017 to the present been critical to Plaintiff's claims, Plaintiff would have likely identified the deficiency sooner and/or would not have made the offer to narrow the scope of the requests in the first instance.

### 2. Fees and costs

Plaintiff's motion for fees and costs is denied without prejudice. "Although Rule 37 allows the award of attorney fees and costs for violation of or the failure to comply with a court order, the court's discretionary power to award attorney fees is based on 'when a party has acted

---

Plaintiff's offer to narrow Request for Production Nos. 18 and 19 during the parties' exchanges on discovery, causing Plaintiff to file the motion to compel discovery on the original requests in January of 2022. (D.I. 61; D.I. 96 at 2) The subsequent court order expressly states that discovery requests "limited to January 1, 2016 to present" are not overly broad or unduly burdensome, and the Delaware Defendants' objections to Request for Production Nos. 18, 19, and 20 as originally drafted were overruled. (D.I. 65) Thus, Plaintiff could have diligently pursued the full scope of discovery in a timely manner.

in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *MobileMedia Ideas LLC v.*
*Apple Inc.*, C.A. No. 10-258-SLR-MPT, 2012 WL 5379056, at *1 (D. Del. Oct. 31, 2012)
(quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).  Here, Plaintiff seeks an award
of nearly $9,000 to remedy the Delaware Defendants' improper redaction of approximately
eleven lines of text from two communications.

 For the reasons stated at § III.B.1, *supra*, the Delaware Defendants shall produce
complete, unredacted versions of WYN000827 and WYN000828 within ten days of the date of
this Memorandum Opinion, and no further remedy is warranted at this time.  Plaintiff's requested
fee amount appears to extend beyond its efforts to obtain unredacted copies of the two
communications, and it includes fees expended to resolve broader discovery issues.  Plaintiff
also fails to show that the specific redactions at issue were the result of the Delaware
Defendants' bad faith or willfulness.  Plaintiff's only argument addressing the Delaware
Defendants' state of mind relates to the withholding of communications dated between January
1, 2017 and the present.  (D.I. 91 at 11)  But, as previously discussed, WYN000827 and
WYN000828 originated after January 1, 2017 and were not withheld under the Delaware
Defendants' unilateral narrowing of the discovery requests.  Consequently, the court in its
discretion declines to award attorney's fees and costs at this time.

 **3.  Future relief**

 The third form of relief, which is forward-looking and conditioned on the Delaware
Defendants' continued refusal to produce the complete, unredacted communications in response
to the court's order on the motion for sanctions, is denied as premature.  For the reasons stated at
§ III.B.1, *supra*, the Delaware Defendants are ordered to produce complete, unredacted versions
of WYN000827 and WYN000828, and compliance with the court's directive is required within

23

ten days of the date of this Memorandum Opinion.  Consideration of remedies for failure to comply is not appropriate before the deadline for the Delaware Defendants' compliance has expired.

Plaintiff's request for prospective relief suggests that Plaintiff wishes to delay the court's ruling on the pending motion to amend until the Delaware Defendants have made the requested production.  (D.I. 91, Proposed Order at 2) (seeking to strike the Delaware Defendants' answering brief and grant Plaintiff's motion to amend if the Delaware Defendants fail to comply with the order on the motion for sanctions).  Plaintiff explains that complete, unredacted versions of WYN000827 and WYN000828 may impact the court's analysis of the pending motion to amend: "These documents are vital illustrations of the relationship between the hotel where this incident occurred and the governing parent company for its franchisor.  They demonstrate the control, insight, and direct involvement Delaware Defendants maintained over the premises where the sexual assault occurred."  (D.I. 96 at 6-7)   On this record, however, there is no basis to further delay resolution of the pending motion to amend on either procedural or substantive grounds.

Procedurally, Plaintiff's original complaint was partially dismissed in February of 2020, more than three years ago.  (D.I. 33)  More than a year after the partial dismissal of the original complaint, Wyndham UK filed a motion to preclude Plaintiff from seeking to file an amended complaint, citing Plaintiff's repeated failure to comply with Local Rule 15.1(a) and her dilatoriness in pursuing an amended pleading.  (D.I. 54)  Although the court denied Wyndham UK's motion to preclude as premature, it described Wyndham UK's timeliness arguments as "persuasive."  (D.I. 57)  Plaintiff waited another eleven months before filing the pending motion to amend on October 10, 2022.  (D.I. 77)  Plaintiff's motion to amend has now been pending for

nearly a year, with its resolution further delayed by the intervening filing of the motion for sanctions. (*Id.*; D.I. 90)  Thus, resolution of the motion to amend has been three years in the making—the same amount of time it typically takes a civil case in this district to go all the way to trial. *See Take2 Techs. Ltd. v. Pac. Biosciences of Cal., Inc.*, C.A. No. 22-1595-WCB, 2023 WL 4930359, at *9 (D. Del. Aug. 2, 2023) (describing evidence showing the median time from filing to trial in civil cases in the District of Delaware is 36 months).  Under the scheduling order, the next phase of discovery cannot begin until the motion to amend is resolved.  (D.I. 74 at ¶ 3) The procedural posture of the case highlights the impracticality of further delaying resolution of the motion to amend.

Substantively, the record does not suggest that unredacted, complete versions of WYN000827 and WYN000828 will have any bearing on the jurisdictional analysis at the heart of Plaintiff's motion to amend.  Plaintiff highlighted the Delaware Defendants' failure to produce complete, unredacted copies of these two documents in communications sent in September of 2022. (D.I. 91, Ex. 4 at 1)  Yet Plaintiff proceeded to file her motion to amend two weeks later without pursuing a timely motion to compel the discovery.  (D.I. 77)  While Plaintiff raised the issue in her briefing on the motion to amend, suggesting that the redactions "could certainly be sanctionable and in this context should yield an inference of Delaware Defendants' control over Özdilek," this briefing is not the proper vehicle to remedy a discovery dispute, and Plaintiff provides no analysis to support her request for the draconian measure of an adverse inference. (*Id.* at 9-10)  The timeline of events following Plaintiff's discovery of the deficiency cuts against Plaintiff's suggestion that the full content of these documents is critical to the jurisdictional analysis.

Moreover, a review of the two partial communications does not indicate that the contents of the redacted material would be pivotal to the jurisdictional analysis. The total redacted content in these two pages amounts to approximately eleven lines of text. (D.I. 91, Ex. 2) In WNY000827, the sentence preceding the redacted portion reads, "[w]e firmly believe that this claim and alleged event are indeed meritless." (*Id.* at 1) This suggests the redacted content pertains to the ultimate merits of Plaintiff's claims, as opposed to the intricacies of the relationship between the Delaware Defendants and the Foreign Defendants that might support the exercise of personal jurisdiction over the Foreign Defendants. And the three lines of redacted text in WYN000828 appear in a paragraph that generally acknowledges the filing of the instant lawsuit. (*Id.* at 2) Neither the content of the redacted communications nor Plaintiff's course of conduct supports a suggestion that the redacted text is critical to Plaintiff's jurisdictional argument regarding the Foreign Defendants. For these reasons, the court declines to further postpone the resolution of the motion to amend.

## IV.   CONCLUSION

For the foregoing reasons, the court DENIES with prejudice Plaintiff's motion to amend the complaint, (D.I. 77), and GRANTS-IN-PART Plaintiff's motion for sanctions, (D.I. 90). Specifically, the motion is GRANTED with respect to the motion to compel the production of complete, unredacted versions of Bates Nos. WYN000827 and WYN000828, and it is DENIED in all other respects. The Delaware Defendants shall produce complete, unredacted versions of Bates Nos. WYN000827 and WYN000828 on or before **August 31, 2023**.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Memorandum Opinion.  Fed. R.

Civ. P. 72(a).  The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

www.ded.uscourts.gov.

Dated:  August 21, 2023

Sherry R. Fallon
United States Magistrate Judge

27